UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GLENN S. MORRISON, DO., <br><br> Plaintiff, <br><br> v. <br><br> STATE OF WASHINGTON; DEPARTMENT OF SOCIAL AND HEALTH SERVICES; DEPARTMENT OF HEALTH; DAVID HOLT, COE WESTERN STATE HOSPITAL; KATHERINE RAYMER, DANIEL RUIZ PAREDES, TODD M. TERHAAR, DOH HEALTH CASE INVESTIGATOR III; CITY OF TACOMA and JENNIFER TERHAAR, <br><br> Defendants. | CASE NO. 3:20-cv-06015-JHC <br><br> ORDER |

# I
## INTRODUCTION

This matter comes before the Court on Defendant Todd M. Terhaar's (Defendant) Motion to Strike Plaintiff's Expert Witness Michael Jones. Dkt. # 108. Having considered the submissions in support of and in opposition to the motion, the balance of the case file, and the applicable law, the Court GRANTS the motion in part and DENIES it in part.

ORDER - 1

## II

### BACKGROUND

Plaintiff Dr. Glenn S. Morrison was employed by the Washington Department of Social and Health Services (DSHS) as a psychiatrist at Western State Hospital. Dkt. # 1–1 at 4. On August 1, 2018, the Washington Department of Health (DOH) received an anonymous complaint "alleging that Dr. Morrison had been engaging in prostitution solicitation, illicit drug use and child pornography." *Id.* at 7.

Defendant, a DOH Healthcare Investigator and former Tacoma police officer, investigated the complaint. *Id.* at 8. During the investigation, Defendant asked Plaintiff if he had ever solicited the services of a prostitute and Plaintiff said he had not. *Id.* at 9. Defendant then obtained non-conviction data regarding an arrest from 2011 for which Plaintiff was not charged.[1] *Id.* at 9. Defendant allegedly warned Plaintiff that the arrest record contradicted Plaintiff's statements that he had not solicited a prostitute, and that Plaintiff may face "additional charges" for "failure to cooperate" and "interference with an investigation." *Id.* at 9. The complaint alleges that Defendant did not have the law enforcement credentials or a "legitimate law enforcement purpose" to access this data. *Id.* Plaintiff says Defendant may have relied on his wife, an employee of the Tacoma Police Department, to get the police report, or he may have improperly obtained the report from South Sound 911's record center after getting the police report number from his wife. *Id.* at 9–10.

On October 25, 2018, Defendant sent Plaintiff's doctor a letter asking for verification that Plaintiff was being treated for urinary tract problems, that he needed catheters for treatment, and that Plaintiff inserted the catheters himself. *See* Dkt. # 58 at 30. During his arrest, Plaintiff had

---

[1] The complaint does not detail what Plaintiff was arrested for in 2011; it says that it was "an arrest of [Plaintiff] for which no criminal charges were ever filed." Dkt. # 1–1 at 9.

ORDER - 2

stated he had lubricant with him because he was "self-catheterizing." Dkt. # 43 at 3. The Complaint alleges that Defendant threatened Plaintiff's doctor with "fines, sanctions and public shaming on the DOH website" if the doctor did not comply with Defendant's "information request" for Plaintiff's protected health information (PHI). Dkt. # 1–1 at 11. Defendant did not receive the requested information. *Id.* at 13.

On November 5, 2018, a second anonymous complaint about Plaintiff was mailed to the Chief Executive Officer of Western State Hospital. *Id.* at 13. The complaint alleged that Plaintiff was "arrested and booked" on charges of solicitation of a prostitute and was "currently under investigation for not reporting this incident" and "lying about it to investigators." *Id.* Plaintiff alleges that Defendant "was among the only persons aware of" his allegedly untruthful responses to Defendant's questions, and says that if Defendant sent the anonymous complaint, such action would be outside the "scope of his duties as a Health Care Investigator." *Id.*

Plaintiff filed suit against Defendant and six other defendants in Pierce County Superior Court on September 16, 2020.² *See generally id.* Among other causes of action, Plaintiff claims that Defendant violated Plaintiff's right of privacy by improperly obtaining non-conviction data and improperly disclosing confidential information to Defendant's wife, DOH, and DSHS. *Id.* at 19. Plaintiff also claims that Defendant violated Washington's Criminal Records Privacy Act by improperly accessing, copying, and disclosing non-conviction criminal history information. *Id.* at 20–21. Defendant City of Tacoma removed the case to federal court on October 14, 2020. *See generally* Dkt. # 1.

Plaintiff disclosed Jones as an expert on August 10, 2022. Dkt. # 71 at 2. The disclosure states:

---

² This order omits the allegations against the other defendants because Jones's proposed testimony focuses on Defendant Terhaar's behavior.

ORDER - 3

> [Jones] will express opinions regarding [a]ccess to criminal records, including non-conviction data, protected health information and disclosure of such information, the legal standards related thereto, training provided to law enforcement officials provided access to such information and the protections afforded to the subject of such inquiries by law enforcement of which a reasonable law enforcement official would be aware.

*Id.* Plaintiff's disclosure says that "the subject of [Jones's] testimony is stated in the Declaration of Michael A. Jones in Opposition to Defendants' Motion for Summary Judgment and exhibits thereto" and attaches the declaration as an exhibit to the disclosure.[3] *Id.* Defendant deposed Jones on October 19, 2022. Dkt. # 109 at 1. Defendant moves to strike Jones. *See* Dkt. # 108.

### III
### LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 charges trial courts to act as gatekeepers to ensure any expert testimony is reliable as well as relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-91; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148–49 (1999) (extending *Daubert*'s general principles beyond scientific testimony to all expert testimony).

The reliability analysis asks whether the testimony has a "reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co.*, 526 U.S. at 149 (internal citation omitted). Relevance is a question of "fit" and whether the expert testimony relates to the facts and issues of the particular case. *Daubert*, 509 U.S. at 591. A Rule 702 inquiry is a "flexible

---

[3] Jones's declaration in opposition to defendants' motion for summary judgment was originally submitted as Dkt. # 52 and Dkt. # 58 (apparently duplicates) on August 1, 2022.

ORDER - 4

one" that recognizes that "an expert is permitted wide latitude to offer opinions." *Id.* at 592, 594. "[S]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

# IV
## DISCUSSION

Defendant requests that Jones be struck from testifying as a witness at trial, saying he lacks the qualifications to be an expert, his opinions are generally not reliably based on facts, two specific opinions in his testimony are speculative, and his proposed testimony includes prohibited statements of law. *See* Dkt. # 108 at 7–12.

A.   Qualifications

Rule 702 "contemplates a broad conception of expert qualifications" by providing that an expert may be qualified either by "knowledge, skill, experience, training, or education." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994); Fed. R. Evid. 702.  If an expert witness fails to meet this standard, a court may exclude their testimony.  *See United States v. Urie*, 183 F. App'x 608, 611 (9th Cir. 2006) (excluding a cultural expert who had "no education or training as a cultural expert generally, or as an expert on Nigerian culture specifically"); *see also Jinro Am. Inc. v. Secure Invs. Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001) (excluding an expert on Korean business who had "no education or training as a cultural expert generally, or as an expert on Korean culture specifically" and did not have any "legal, business or financial expertise to evaluate the substance of the [business] transaction").

Defendant says that Jones fails to qualify as an expert in a relevant field under Rule 702 because "his knowledge and expertise are based solely on his career in private security" and "[t]here is no indication that Mr. Jones has ever worked in an investigatory role or been

ORDER - 5

employed by a state agency." Dkt. # 108 at 8–9.  Defendant likens Jones to the unqualified expert in *Urie*, stating that Jones's private security career is "wholly unrelated" to the type of state-run investigation at issue in this case and Jones is unaware of "Washington Department of Health investigatory practices, or any investigation for that matter." *Id.* at 9.

But as Plaintiff emphasizes, Jones does have knowledge, experience, training, and education related to investigations and management of non-conviction records and PHI.  *See* Dkt. # 124 at 7–10; *see United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) ("Law enforcement professionals are routinely qualified to offer expert testimony based on their training and experience.").  Jones holds several degrees and certificates related to criminal justice, including a Master of Science in Criminal Justice Administration.  *See* Dkt. # 58 at 17. Jones has had almost 30 years of experience with the Virginia Capitol Police in different roles including police officer, investigator, captain, and chief of police.  *Id.* at 19.

Jones also has relevant experience working with state agencies regarding their record management practices.  For example, Jones presented to the Virginia Department of Health about "law enforcement and support of vital records systems" and completed a full audit of the Virginia Department of Behavioral Health, including an analysis of its policies regarding records.  *See* Dkts. ## 58 at 24; 109 at 21.  Jones has also trained Virginia healthcare investigators about the release of health records and the authorization required to share such information under National Criminal Information Center regulations, internal policies, and Virginia Criminal Information Network regulations.  *See* Dkt. # 109 at 22–23.

Defendant emphasizes that Jones's experience is specific to Virginia and that he has never worked in Washington.  *See* Dkts. ## 108 at 3–4; 127 at 3; 109 at 24–25 (stating that 90 percent of Jones's "projects, achievements, and tasks" occurred in Virginia).  However, where an expert is generally qualified, lack of specific experience "goes to the weight of [the expert's]

ORDER - 6

testimony, not to its admissibility." *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984) (allowing an expert in income tax to testify despite lacking specific experience in partnership taxation); *see also United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993) (allowing an expert in children's mental health to testify despite lacking specific expertise on the subject of child testimony through closed circuit television). This is true even if the expert gained experience outside the locality of the case, as long as the matters at issue do not differ by geographic location. *See Wilder Enters. Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1143–44 (4th Cir. 1980) (finding no evidence that subject of the expert's testimony "would differ essentially because of geographic location."); *cf. United States v. Johnson*, 285 F.2d 35, 41 (9th Cir. 1960) (explaining that although the district court did not err in excluding an expert that lacked expertise in local conditions and the relevant specialty, "perhaps some other trial courts, in the exercise of their discretion, would consider the witness qualified and permit his testimony . . . ."). Here, Defendant does not provide any evidence that Jones's lack of experience as to Washington makes a legal difference. *See generally* Dkts. # 108, 127. And Jones said in his deposition that the section of the Washington State Criminal Justice and Privacy Act concerning "where records can go to and how they can be distributed" is "very similar to [National Criminal Information Center] guidelines." Dkt. # 109 at 29.

Therefore, the Court finds that Jones has sufficient qualifications to testify as an expert regarding access to, and disclosure of, criminal records and PHI. Also, Jones is qualified to testify about the training law enforcement officials receive about legal protections afforded to criminal records and PHI.

B.   Sufficiency of Facts

Rule 702 requires expert testimony to be based on "sufficient facts or data." As a gatekeeper, but not a fact finder, the district court's role is not to decide "whether the expert is

ORDER - 7

right or wrong" in their conclusions.  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–970 (9th Cir. 2013).  Instead, the court must determine whether there is a sufficient factual foundation for the expert's testimony to be reliable.  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025–26 (9th Cir. 2022).

Defendant says that Jones's testimony lacks a sufficient factual foundation because Jones "is unaware of key facts and has already made many subjective, inaccurate assumptions regarding [Defendant]'s actions as an investigator," including Defendant's law enforcement credentials, the allegations Defendant was investigating, what constitutes non-conviction data, and the rules governing the release of police incident reports under Washington law.  Dkt. # 108 at 10.  Defendant notes that courts sometimes exclude testimony when experts fail to base their opinions on specific facts.  *See* Dkt. # 108 at 9 (citing *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 832 (9th Cir. 2001) (excluding an expert's testimony when the case record did not reveal any underlying facts which could support his opinion).

Jones's testimony is distinguishable from the expert testimony in *Guidroz-Brault*.  There, Plaintiffs sued a railroad company for negligence after someone sabotaged the tracks and a train derailed.  *Guidroz-Brault*, 254 F.3d at 827.  Plaintiffs' accident reconstruction expert opined that, assuming the saboteurs left visible gaps in the track, the engineer "should have applied the train's emergency breaks 400 feet before the train reached the [point of derailment]."  *Id*. at 831.  However, the court found no facts in the record to support the opinion that the saboteurs left visible gaps in the tracks, and the saboteurs had been careful to hide other signs of their sabotage.  *Id.* at 827–28, 832.  Thus, the expert's testimony was deemed inadmissible.  *Id.* at 832.

Unlike in *Guidroz-Brault*, Jones relies on several documents in the record for his testimony.  For example, Jones relies on the Washington DOH's Policy on confidential healthcare information and the Washington DOH's Investigator Desk Manual to support his

ORDER - 8

testimony about Washington record-sharing rules. *See* Dkt. # 58 at 11–12 ("DOH Policies restrict the disclosure of confidential information in their own internal policies" and "[t]hat is contrary to the procedures outlined by the Washington State Department of Health Investigator's Desk Manual . . ."). Jones also refers to Defendant's answers to interrogatories. *Id.* at 10 (pointing to Defendant's responses to several interrogatories to support that claim that Defendant "did not maintain a record of the persons to whom he made disclosures of the criminal history information"). This refutes Defendant's assertion that Jones's testimony is not grounded in specific facts of the case, and it establishes the "sufficient factual grounds" required for Jones's testimony to be admissible. *Elosu*, 26 F.4th at 1025–26.

Plaintiff admits that Jones misspoke about some facts during his deposition but asserts that Jones can "reexamine any misstatements before trial" and that limitations to the credibility of his testimony can be challenged by Defendant at trial. *See* Dkt. # 124 at 11; *see also Thompson v. City of Olympia*, No. 3:18-cv-05267-RBL, 2019 WL 3287822, at *4–5 (W.D. Wash. July 22, 2019) (allowing testimony from a qualified expert despite Defendants' concerns about inaccurate assumptions about legal duties and liability because Defendants can raise objections and cross-examine the witness); *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 ("the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). Therefore, Defendant fails to establish a basis for excluding Jones's testimony on foundation grounds.

C.     Letters

Defendant identifies two specific aspects of Jones's testimony as particularly speculative and thus too unreliable to be helpful to the jury. *See* Dkt. # 58 at 11–12. First, Defendant says that Jones cannot testify that Defendant's letter to Plaintiff's doctor "amounts to a request for records" because Jones lacks investigatory experience and "there is no indication that he is

knowledgeable in the area of records or requests or analyzing written documents to determine their nature." *Id.* at 12.  Defendant also says that the "letter is completely devoid of the term 'record' or any requests for record" so "any determination that the letter was a records request would be unsupported speculation by Mr. Jones." *Id.*  Second, Defendant says that "[t]here is no evidence in the record indicating" that Defendant authored an anonymous letter to the DOH, and that "any reliance upon it will be unsupported speculation." *Id.* at 11.

1.  Letter to Plaintiff's doctor

The Court disagrees with Defendant's characterization of Jones's testimony.  Jones does not say in his declaration that the letter is a "request for records." *See generally* Dkt. # 58.  Instead, Jones's declaration is focused on the propriety of the letter and whether Defendant "attempted to obtain [Plaintiff]'s Protected Health Information" in violation of typical healthcare investigation procedures. *See* Dkt. # 58 at 11–12.  Jones also does not conclude that the letter is a "request for records" in his deposition. *See* Dkt. # 109 at 38, 93 (describing the letter as an attempt to gain PHI, or an "effort to gain intimate medical care information").  Defendant has not raised an objection to Jones's ability to testify about whether the letter reflected proper healthcare investigation procedure. *See generally* Dkt. # 108.  Thus, Defendant has failed to establish a basis for excluding Jones's testimony about Defendant's letter to Plaintiff's doctor.

2.  Anonymous complaint letter

Jones identifies some "strong circumstantial evidence" in support of his conclusion that Defendant authored the second anonymous complaint, including that the letter was sent "within days of [Defendant] being blocked from accessing [Plaintiff]'s protected health information" and "[the letter] references a confidential meeting between [Defendant], [Plaintiff], and [Plaintiff]'s attorney of which no other person likely would have been aware." Dkt. # 58 at 14.  But Jones fails to explain a nexus between his investigative knowledge, this circumstantial evidence, and

ORDER - 10

the conclusion he draws that Defendant authored the anonymous complaint. *See United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002) (emphasizing that a district court cannot solely evaluate the reliability of an expert's testimony by relying on the expert's "general qualifications" without evaluating the explanation provided for how the expert arrived at their specific conclusion).

In *Holguin*, the court allowed Plaintiff's expert, a former "Mexican Mafia" member with experience analyzing Mexican Mafia communications for law enforcement, to testify about the meaning of a coded letter because "[he] detailed how he applied [his] experience to the ranch letter." 51 F.4th at 860. Based on his "specific experience with the Mexican Mafia's methods of communication," the expert identified individual expressions in the letters and explained how he knew they were coded references to drug-related activities. *Id.*

Unlike the expert in *Holguin*, Jones fails to explain how he relied on his investigative experience to interpret the circumstantial evidence to conclude that Defendant authored the anonymous letter. *See generally* Dkt. # 58. To the contrary, Jones says "[i]t does not take someone with my years of law enforcement investigations" to interpret the timing of the anonymous letter as circumstantial evidence that the Defendant wrote it. *Id.* at 14. This statement both fails to tie Jones's conclusion to his experience and fails the Rule 702 requirement that "the subject matter at issue [in an expert's testimony] must be beyond the common knowledge of the average layman." *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997). Plaintiff's response to the motion does not provide any information about how Jones applied his investigative knowledge to interpret the circumstantial evidence and came to his conclusion that Defendant authored the anonymous letter. *See generally* Dkt. 124. Jones is thus excluded from testifying as such at trial.

D.     Legal Conclusions

Fed. R. Evid. 704(a) provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it *embraces* an ultimate issue to be decided by the trier of fact" (emphasis added).  But "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law 'is the distinct and exclusive providence' of the court." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original) (internal citation omitted).  In *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008), the Ninth Circuit affirmed the district court's exclusion of parts of an expert witness's testimony and report that stated the following legal explanations and conclusions: discussions of the UCC and other non-UCC laws and their application to the facts of the case; discussions of the parties' "legal rights, duties, and obligations under the law"; and discussions about whether the parties' actions were "wrongful" or "intentional."  However, the expert was still allowed to discuss "industry conditions, standards, practices, and norms." *Id.*

Defendant states that Jones's declaration[4] "is riddled with legal conclusions of both state and federal law." Dkt. # 108 at 11.  For example, Jones's declaration "repeatedly asserts that [Defendant]'s investigatory practices violated both state and federal law and includes citations to both [f]ederal and Washington statutes." *Id.*

The Court agrees with Defendant that Jones's declaration does include various legal conclusions. *See generally* Dkt. # 58.  For example, Jones states that Defendant Terhaar's behavior "violates the Washington Criminal Justice Privacy Act, RCW 10.97 *et seq.* and [Plaintiff]'s Constitutional right of privacy." *Id.* at 2.  Jones also concludes that "[t]he provisions

---

[4] This is at Dkt. # 28, Jones's declaration in opposition to Defendants' motion for summary judgment, noted above as the document used as Jones's initial expert report.

ORDER - 12

of RCW 18.130.057(2)(b) prohibit the Department of Health from making disclosure of information exempt from public inspection and copying pursuant to RCW 18.130.095(1). That would include non-conviction data." *Id.* at 11. Finally, Jones asserts that Defendant's conduct "violated Dr. Morrison's rights, is unethical and may even rise to the level of criminal conduct." *Id.* at 14.

Like the expert witness in *Nationwide Transport Finance*, Jones may not testify about federal or Washington laws on record-keeping and apply them to the facts of this case; discuss the parties' specific legal rights and duties under the law; and determine whether any conduct violated the law.

E.  Defendant's Reply

As discussed above, Plaintiff responded to Defendant's motion with a brief and two declarations (one from Jones and one from Plaintiff's attorney). *See* Dkts. # 124–26. In Defendant's reply to Plaintiff's response, Defendant says that under Fed. R. Civ. P. 26(e)(2), Jones's new declaration and pages 1–5 of Plaintiff's brief were untimely supplements to the initial disclosure of expert testimony and reports, and should either be struck, or Defendant should be allowed to re-depose Jones at Plaintiff's cost. *See* Dkt. # 127 at 1–2.

Jones's new declaration and Plaintiff's summary of Jones's professional experiences on pages 1–5 of Plaintiff's brief largely repeat information included in Jones's declaration in opposition to Defendants' motion for summary judgment, deposition, and résumé. *Compare generally* Dkts. # 58 and 109 *with* Dkts. # 125–26. Thus, the Court did not rely on Jones's new declaration and pages 1–5 of Plaintiff's reply brief in reaching its conclusions in this order.

# V
## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion to Strike Expert Jones (Dkt. # 108). Michael Jones may not testify at trial as to legal conclusions about the application of federal and state record-sharing laws to the facts of this case, the parties' specific legal rights and duties under the law, or whether Defendant's conduct violated the law or are criminal. Also, Jones may not testify at trial about Defendant's potential authorship of the anonymous complaint letter. The motion is otherwise denied.

Dated this 17th day of August, 2023.

John H. Chun
United States District Judge